IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **JOHN BOOZER,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**SIGMA RESOURCES, LLC and DELOITTE CONSULTING, LLP,**<br><br>**Defendants.** | Civil Action No. _____<br><br>Jury Trial Demanded |

# COMPLAINT

Plaintiff John R. Boozer, by and through his attorneys, herein asserts claims against Defendants Sigma Resources, LLC and Deloitte Consulting, LLP, showing the Court as follows:

## Introduction

1. In this Fair Labor Standards Act action, 29 U.S.C. § 201 *et seq.*, Plaintiff Boozer seeks to recover unpaid overtime wages, liquidated damages, and costs of litigation from his former employers.

**Parties, Jurisdiction, and Venue**

2. This Court has original jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because it arises under the Fair Labor Standards Act (29 U.S.C. § 201 *et seq*.), a federal statute.

3. Mr. Boozer is a natural person residing in Forsyth County, Georgia.

4. Defendant Sigma Resources, LLC (hereinafter "Sigma") is a foreign limited liability company existing under the laws of the State of Pennsylvania. Sigma may be served with process at its offices located at 7950 Saltsburg Road, Suite 200, Pittsburgh, PA 15239.

5. Sigma is subject to the personal jurisdiction of this Court because it conducts substantial business activities in this District, including the business activities for which it employed Mr. Boozer, all of which occurred in this District.

6. Defendant Deloitte Consulting, LLP (hereinafter "Deloitte") is a foreign limited liability partnership existing under the laws of the State of New York and registered to do business in the State of Georgia. Deloitte may be served with process via service on its registered agent, Corporation Service Company, at 40 Technology Parkway South, Suite 300, Norcross, GA 30092.

7. Deloitte is subject to the personal jurisdiction of this Court because it maintains a registered agent for service of process in this district, it engages in

substantial business activities in this district, including the business activities for which it employed Mr. Boozer, all of which occurred in this District.

8. Venue properly lies in this district and division pursuant to 28 U.S.C. § 1391(b)–(c) because Defendants are subject to this Court's personal jurisdiction with respect to the claims raised, because its most significant contacts lie within this division and district, and because the actions complained of herein occurred in this district and division.

**Employment Relationship and FLSA Coverage**

9. Sigma is an information technology provider whose business includes, *inter alia*, provides staffing services to other companies working on technology-focused projects for federal, state, and local governments.

10. Deloitte is a global consulting firm that provides, *inter alia*, technology consulting services to federal, state, and local governments.

11. Mr. Boozer worked for Defendants as a "tester" at the offices of Deloitte Consulting in Atlanta, Georgia, from the workweek ending April 8, 2017 through the workweek ending June 10, 2017 ("the Relevant Time Period").

12. While Sigma held itself out as Mr. Boozer's "employer," Mr. Boozer's work simultaneously benefitted both Sigma and Deloitte.

13. Sigma and Deloitte shared control over Mr. Boozer with respect to his employment as a "tester."

14. Sigma and Deloitte both serviced the projects that Mr. Boozer worked on as a "tester," and those services were highly interrelated through unified operation or common control, and for a common business purpose.

15. Throughout the Relevant Time Period, Sigma was Mr. Boozer's "employer" within the meaning of 29 U.S.C. § 203(d).

16. Throughout the Relevant Time Period, Deloitte was Mr. Boozer's "employer" within the meaning of 29 U.S.C. § 203(d).

17. In 2017, Sigma had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

18. In 2017, Deloitte had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" within the meaning of 29 U.S.C. § 203(s)(1)(A).

19. In 2017, Sigma had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

20. In 2017, Deloitte had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

21. In 2017, Sigma was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 207(a)(1).

22. In 2017, Deloitte was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 207(a)(1).

**Non-Exempt Employee**

23. Throughout the Relevant Time Period, Mr. Boozer created "User Scenarios" for the purpose of inputting them into a Deloitte software program in order to determine whether the software would function as expected in real-world circumstances.

24. All of the User Scenarios created were reviewed and approved by either a team lead or other more senior team member.

25. Mr. Boozer also executed the approved User Scenarios on the "End to End" system, which had already been designed, developed and tested by others.

26. Mr. Boozer's work as a "tester" heavily involved repetitive data entry. Each 'Benefits Case' to be entered took between 30-60 minutes, as each one

required data entry of hypothetical applicant/household names, DOBs, SSNs, Income, Living Arrangements, Education Background, Expenses, Citizenship, etc.

27.   All of this information had to be entered so that the software's EDBC (Eligibility Determination Benefits Calculator) function could be used and the results of the EDBC could be documented.

28.   The results of the EDBC consisted of a determination of what benefits and how much benefits each hypothetical household would qualify for.

29.   After executing each approved User Scenario, if the EDBC did not operate as expected, Mr. Boozer would report the error to a Team Lead who would then either provide additional scenarios to enter and execute, or direct Mr. Boozer to create a trouble ticket to give to the development team for resolution.

30.   After any trouble ticket(s) were resolved and tested by the software development team, Mr. Boozer would re-execute the relevant user scenario(s) to confirm the development team's fix resolved the error previously detected.

31.   Throughout the Relevant Time Period, Mr. Boozer did not exercise independent judgement and discretion with respect to matters of significance.

32.   Throughout the Relevant Time Period, Mr. Boozer's work as a "tester" did not require highly skilled or specialized knowledge.

33. Throughout the Relevant Time Period, Mr. Boozer did not perform work directly related to the management or general business operations of Sigma, Deloitte, or their customers.

34. Throughout the Relevant Time Period, Mr. Boozer did not have the authority to formulate, affect, interpret or implement management policies or practices.

35. Throughout the Relevant Time Period, Mr. Boozer did not manage others, or aid in hiring/firing decisions.

36. Throughout the Relevant Time Period, Mr. Boozer's primary duties did not include the performance of overtime-exempt duties.

37. Throughout the Relevant Time Period, Mr. Boozer's primary duties consisted of routine data entry.

38. Throughout the Relevant Time Period, Mr. Boozer was not employed in a bona fide professional capacity within the meaning of 29 U.S.C. § 213(a).

39. Throughout the Relevant Time Period, Mr. Boozer was not employed in a bona fide administrative capacity within the meaning of 29 U.S.C. § 213(a).

40. Throughout the Relevant Time Period, Mr. Boozer was not employed in a bona fide executive capacity within the meaning of 29 U.S.C. § 213(a).

41. Throughout the Relevant Time Period, Mr. Boozer's primary duties did not include "the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications" within the meaning of 29 U.S.C. § 213(a)(17)(A).

42. Throughout the Relevant Time Period, Mr. Boozer's primary duties did not include "the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications" within the meaning of 29 U.S.C. § 213(a)(17)(B).

43. Throughout the Relevant Time Period, Mr. Boozer's primary duties did not include "the design, documentation, testing, creation, or modification of computer programs related to machine operating systems" within the meaning of 29 U.S.C. § 213(a)(17)(C).

44. Throughout the Relevant Time Period, Mr. Boozer's primary duties did not include a combination of duties described in the three preceding paragraphs, the performance of which required the same level of skills.

45. Throughout the Relevant Time Period, Mr. Boozer was not employed as a computer systems analyst, computer programmer, software engineer, or other

similarly skilled worker subject to the overtime exemption set out in 29 U.S.C. § 213(a)(17).

46.   Throughout the Relevant Time Period, Mr. Boozer was not exempt from the overtime wage requirements of the Fair Labor Standards Act under any exemption enumerated in 29 U.S.C. §§ 207 or 213.

**Overtime Violation**

47.   Throughout the Relevant Time Period, the Fair Labor Standards Act required Defendants to compensate Mr. Boozer at one-and-one-half times his regular rate for all hours worked in excess of forty (40) in any given workweek.

48.   Throughout the Relevant Time Period, Defendants knew or should have known that Mr. Boozer was not exempt from the maximum hour provisions of the FLSA.

49.   Mr. Boozer worked for Defendants in excess of 40 hours per week in every workweek throughout the Relevant Time Period.

50.   Throughout the Relevant Time Period, Defendants failed to compensate Mr. Boozer at the required rate of one-and-one-half times his regular rate for all hours worked in excess of 40 hours per week.

51.     Throughout the Relevant Time Period, Defendants compensated Mr. Boozer at his regular hourly rate for all hours worked, regardless of the number of hours worked in a given workweek.

52.     Upon information and belief, in failing or refusing to pay Mr. Boozer overtime wages as required by the FLSA, Defendants did not rely on any letter ruling from the U.S. Department of Labor indicating that Mr. Boozer was subject to any exemption from the maximum hour provisions of the FLSA.

53.     Upon information and belief, in failing or refusing to pay Mr. Boozer overtime wages as required by the FLSA, Defendants did not rely on any legal advice indicating that Mr. Boozer was subject to any exemption from the maximum hour provisions of the FLSA.

54.     Defendants' failure to compensate Mr. Boozer in accordance with the FLSA's maximum hour provisions was "willful" within the meaning of 29 U.S.C. § 255 because Defendants either knew or acted with reckless disregard of whether their conduct was prohibited by the FLSA.

### COUNT ONE – FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF 29 U.S.C. §§ 207 AND 215

55.     Throughout his employment by Defendants, Mr. Boozer worked in excess of 40 hours per week during every workweek.

56. Defendants were required to compensate Mr. Boozer at the rate of one-and-one-half times his regular rate for all hours worked in excess of 40 hours in each workweek.

57. Defendants failed to compensate Mr. Boozer at the legally required overtime rate for all hours worked in excess of 40 hours per week in each workweek.

58. Defendants' failure to compensate Mr. Boozer at the rate of one-and-one-half times his regular hourly rate for all hours worked over 40 hours per week is a violation of 29 U.S.C. § 207 and 215.

59. Mr. Boozer is entitled to receive his unpaid overtime wages, liquidated damages in an amount equal to his actual damages, prejudgment interest to the extent that liquidated damages are not awarded, nominal damages, and his costs of litigation, including his reasonable attorney's fees, pursuant to 29 U.S.C. § 216.

**WHEREFORE**, Plaintiff Boozer requests that this Court:

(a) Grant a trial by jury as to all matters properly triable to a jury;

(b) Issue a judgment declaring that Plaintiff was covered by the FLSA and that Defendants failed to comply with the maximum hour requirements of the FLSA;

(c) Award Plaintiff proper payment for each overtime hour worked during the Relevant Time Period, and liquidated damages equaling 100% of the unpaid overtime wages due to Plaintiff;

(f) Award Plaintiff prejudgment interest on all amounts owed, to the extent that liquidated damages are not awarded;

(g) Award Plaintiff nominal damages;

(h) Award Plaintiff his costs of litigation and reasonable attorney's fees; and

(i) Award any and such other further relief this Court deems just, equitable, and proper.

This 15th day of April 2019,

Respectfully submitted,

**DELONG, CALDWELL, BRIDGERS, FITZPATRICK & BENJAMIN, LLC**

*/s/ Matthew W. Herrington*
Mitchell D. Benjamin
Ga. Bar No. 049888
Matthew W. Herrington
Ga. Bar No. 275411

3100 Centennial Tower
101 Marietta Street
Atlanta, Georgia 30303
(404) 979-3150
(404) 979-3170 (f)
benjamin@dcbflegal.com
matthew.herrington@dcbflegal.com

**Counsel for Plaintiff**